# United States Court of Appeals
# for the Sixth Circuit

ROBERT ODELL, JR., GREGORY MICHAEL PINGOT; KATIE ANN KOTULA;
CONNIE JOYCE JONES; PATRICIA LYNN VERLANDER; KEVIN WEBBER;
AUSTIN ROBERT ISAAC HUDNUTT; CHRISTIAN TOUGAS; CHARLES CHRISTIAN
GALTON; TRAVIS WAYNE ROBERTSON; AND KEVIN MCALLISTER, *on behalf
of themselves and others similarly situated,*

> *Plaintiffs–Appellants-Petitioners,*

v.

KALITTA AIR, LLC, AND CONRAD KALITTA,

> *Defendants–Appellees-Respondents.*

On Appeal from the United States District Court
for the Eastern District of Michigan, Northern Division,
1:22-cv-12290

## PETITION FOR REHEARING EN BANC OR PANEL REHEARING

Walker Moller
**SIRI | GLIMSTAD**
1005 Congress Avenue
Suite 925-C36
Austin, TX 78701
wmoller@sirillp.com

John C. Sullivan
*Counsel of Record*
**S|L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, Texas 75104
T: (469) 523-1351
F: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

*Counsel for Petitioners*

# TABLE OF CONTENTS

Table of Authorities........................................................................ii

Introduction and Rule 35(b) Statement..................................... 1

Issues Meriting Rehearing En Banc or Panel Rehearing ........ 5

Relevant Background and Procedural History......................... 6

Argument........................................................................................ 9

   I.    In Conflict With The Supreme Court And Multiple
        Circuits—Including This Court—The Panel Affirmed
        RLA Preclusion Based Solely On Defendants'
        Description Of CBA Terms...................................................... 11

        A.   The Panel Implicitly Held that Referencing
             CBA Terms Triggers Preclusion................................. 11

        B.   Allowing Mere Descriptions of CBA Terms
             to Justify Preclusion—Without Searching
             for Possible Accommodations—Creates
             Intolerable Conflicts.................................................... 13

   II.   In Conflict With The Supreme Court And Multiple
        Circuits—Including This Court—The Panel Affirmed
        RLA Preclusion Without Considering Defendants'
        Discriminatory Application Of The CBA. ................................ 15

   III.  The Panel Opinion Has Profound Implications. ...................... 17

   IV.  Panel Rehearing Is Warranted Because—As Both The
        Record And Caselaw Demonstrate—Plaintiffs Did Not
        Forfeit Intentional Discrimination Claims. ............................. 18

Conclusion .....................................................................................21

Certificate of Service ...................................................................23

Certificate of Compliance............................................................24

Appendix A – Opinion and Order of Sixth Circuit Court of Appeals

Appendix B – References to Intentional Discrimination Prior to the
Report & Recommnedation of the Magistrate Judge

# TABLE OF AUTHORITIES

## Cases

*Brown v. Ill. Cent. R.R. Co.*,
  254 F.3d 654 (7th Cir. 2001) ........................................................... 3, 14

*Carmona v. Sw. Airlines, Co.*,
  536 F.3d 344 (5th Cir. 2008) ........................................ 3, 10–11, 14, 16

*Crider v. Univ. of Tenn.*,
  492 F. App'x. 609, 615 (6th Cir. 2012) ........................................... 3, 6, 9

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
  575 U.S. 768, 772, (2015) .............................................................. *passim*

*Felt v. Atchison, Topeka, & Santa Fe Ry. Co.*,
  60 F.3d 1416, 1419–21 (9th Cir. 1995) ............................................ 3, 14

*Groff v. DeJoy*,
  600 U.S. 447, 473 (2023) ................................................................ *passim*

*Hawaiian Airlines, Inc. v. Norris*,
  512 U.S. 246, 252 (1994) ................................................................ 9, 10

*Johnson v. City of Shelby*,
  574 U.S. 10, 12 (2014) .......................................................................... 21

*Lingle v. Norge Div. of Magic Chef, Inc.*,
  486 U.S. 399, 407 (1988) ................................................. 3, 4, 11, 15, 16

*Livadas v. Bradshaw*,
  512 U.S. 107, 124 (1994) ...................................................................... 13

*Nguyen v. United Air Lines, Inc.*,
  2010 WL 2901878, at *3–4 (W.D. Mich. July 23, 2010) ...................... 16

*Odell v. Kalitta Air, LLC*,
  2024 WL 3338349, at *4–5 (6th Cir. July 9, 2024) ...................... *passim*

*Paul v. Kaiser Found. Health Plan of Ohio,*
  701 F.3d 514, 522 (6th Cir. 2012) ..................................................... 9–10

*Powers v. Cottrell, Inc.,*
  728 F.3d 509, 516 (6th Cir. 2013) ............................................... 9, 13, 14

*Rabe v. United Air Lines, Inc.,*
  636 F.3d 866, 873 (7th Cir. 2011) ......................................... 3–4, 14, 16

*Sambrano v. United Airlines, Inc.,*
  2023 WL 8721437 (N.D. Tex. Dec. 18, 2023) ......................................... 3

*Savel v. MetroHealth Sys.,*
  96 F.4th 932, 944 (6th Cir. 2024) ................................................... 20, 21

*Stanley v. ExpressJet Airlines, Inc.,*
  808 F. App'x 351, 354–56 (6th Cir. 2020) ..................................... 10, 13

*Yelder v. Norfolk S. Ry. Co.,*
  2022 WL 18587845, at *2 (6th Cir. Aug. 12, 2022) ......................... 3, 13

**Statutes**

Railway Labor Act,
  45 U.S.C. § 151, et seq. .............................................................. *passim*

Title VII of the Civil Rights Act of 1964,
  42 U.S.C. § 2000e, et seq. ......................................................... *passim*

Americans with Disabilities Act of 1990,
  42 U.S.C. § 12101, et seq. ........................................................ *passim*

## INTRODUCTION AND RULE 35(B) STATEMENT

When Kalitta Air, LLC ("Kalitta" or "Defendants") implemented a COVID-19 vaccine mandate, its CEO promised no accommodations would be considered. Yet when Pilots brought claims for the refusal to provide accommodations, the company argued those claims were precluded under the Railway Labor Act (RLA). Adopting Defendants' description of collective bargaining agreement (CBA) terms, the district court accepted the RLA argument, believing the court would be forced to "interpret" the CBA to adjudicate whether one accommodation—company scheduling adjustments—was possible. But the district court never examined any CBA terms, and never allowed Plaintiffs discovery on either discriminatory application of the CBA or potential accommodations outside the CBA altogether. The panel's affirmance of that flawed holding conflicts with Supreme Court and Sixth Circuit precedent, conflicts with authoritative decisions of other Courts of Appeals, and leaves employees helpless against discrimination from which they are shielded in other circuits.

For the first time, RLA preclusion has been upheld based solely on *headers from a CBA Table of Contents. See Odell v. Kalitta Air, LLC,*

2024 WL 3338349, at *4–5 (6th Cir. July 9, 2024) (noting Defendants did not provide the "relevant provisions" of the CBA for their argument). Defendants claimed that, because seniority is *mentioned* in the contract, it would be affected by the company altering schedules for unvaccinated pilots. Plaintiffs were never allowed to test that assertion.

Plaintiffs did, however, provide the *controlling* CBA term— language *allowing Kalitta* to *unilaterally adjust pilot schedules*. ECF 44-2, PageID #640–41. This explains why Defendants hid CBA terms from the court—the relevant provisions gut Kalitta's defense.

Yet even if the CBA did not allow unilateral schedule changes by Defendants, no "interpretation" was necessary because the contractual terms are undisputed and accommodations outside the contract were available. The CBA expert here—the pilots' union—agrees. R.27-4, PageID #403. But the district court jumped the gun, refusing to let Plaintiffs develop the record on accommodations—like voluntary schedule changes. *See Groff v. DeJoy*, 600 U.S. 447, 473 (2023) ("Faced with an accommodation request like [this one, it is] not . . . enough for an employer to conclude that [one type of accommodation] would

constitute an undue hardship.  Consideration of other options, such as voluntary shift swapping, would also be necessary.").

In holding Plaintiffs' claims "inextricably intertwined" with the (unknown) CBA terms, the panel created a conflict with the Supreme Court, Sixth Circuit caselaw, and at least three other circuits.  *See Groff*, 600 U.S. at 473; *Yelder v. Norfolk S. Ry. Co.*, 2022 WL 18587845, at *2 (6th Cir. Aug. 12, 2022); *Crider v. Univ. of Tenn.*, 492 F. App'x. 609, 615 (6th Cir. 2012); *Carmona v. Sw. Airlines, Co.*, 536 F.3d 344, 345–49 (5th Cir. 2008); *Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 667–68 (7th Cir. 2001); *Felt v. Atchison, Topeka, & Santa Fe Ry. Co.*, 60 F.3d 1416, 1419–21 (9th Cir. 1995).  In this Circuit—and *only* this Circuit—employers may now avoid Title VII/ADA liability by describing a phantom CBA conflict and not pursuing potential alternatives.  Part I *infra*.[1]

Moreover, authorizing the discriminatory application of a CBA conflicts with *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988), this Court's opinion in *Yelder*, 2022 WL 18587845, at *2, as well as the Fifth and Seventh Circuits—*Carmona*, 536 F.3d at 345–49; *Rabe*

---

[1] Tellingly, airlines facing the exact claims at issue here have not tried this RLA argument elsewhere.  *See, e.g.*, *Sambrano v. United Airlines, Inc.*, 2023 WL 8721437 (N.D. Tex. Dec. 18, 2023).

*v. United Air Lines, Inc.*, 636 F.3d 866, 873 (7th Cir. 2011). Notwithstanding the RLA, CBAs cannot be used to harm religious employees, for example, while accommodating felons (as uncontroverted evidence here shows). It matters *how* a CBA is implemented. *See Lingle*, 486 U.S. at 407 ("[P]urely factual questions [about] the conduct and motivation of the employer [do not] require[] a court to interpret any term of a [CBA]."). Part II *infra*.

Because the panel opinion conflicts with Supreme Court, Sixth Circuit, and other circuit precedent, rehearing is warranted to secure uniformity on these questions of importance to the rights of workers subject to the RLA. Part III *infra*.

Finally, while the panel held claims of intentional discrimination forfeited, this conflicts with the record and controlling precedent. The Magistrate Judge addressed intentional discrimination in her Report & Recommendations (R&R). R.43, PageID #573. Moreover, *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772, (2015), demonstrates Plaintiffs' failure to accommodate claims *are* intentional discrimination claims. This error warrants panel rehearing. Part IV *infra*.

## ISSUES MERITING REHEARING EN BANC OR PANEL REHEARING

1. Whether—in conflict with authority from the Supreme Court, this Court, and other circuits—an employer merely describing a CBA conflict triggers an "interpretation" prohibited by the RLA, even where uncontroverted evidence shows no conflict and possible accommodations were not considered.

   (*For rehearing en banc.*)

2. Whether—in conflict with authority from the Supreme Court, this Court, and the Fifth and Seventh Circuits—claims are precluded by the RLA even where uncontroverted evidence shows discriminatory application of the CBA.

   (*For rehearing en banc.*)

3. Whether intentional discrimination claims repeatedly raised to the district court are forfeited where: (a) the Magistrate Judge addressed those claims in the R&R; (b) *Abercrombie* demonstrates Plaintiffs' failure to accommodate claims are intentional discrimination claims; and (c) pleadings/declarations offer "specific events" demonstrating intentional discrimination.

   (*For panel rehearing.*)

## RELEVANT BACKGROUND AND PROCEDURAL HISTORY

The panel recognized Kalitta "argue[d]" and "claim[ed]"—in its Motion to Dismiss—that granting accommodations violated CBA provisions related to seniority and scheduling. *Odell*, 2024 WL 3338349, at *5. But in describing their view of the contract, Defendants did not provide the "full text of Kalitta's CBA (or even the relevant provisions)." *Id.* at *2. Relying on the CBA's Table of Contents, Defendants claimed that *one* proposed accommodation—not scheduling pilots to fly certain routes—violated seniority provisions (even though Kalitta regularly makes such adjustments).[2]

Though Defendants never showed one instance of restricted country access, Plaintiffs offered evidence that: (1) the CBA allows the company to make unilateral changes to pilot schedules (as it does for felons and pilots lacking visas); and (2) no seniority provision is violated by allowing pilots to avoid countries. R.27-7, PageID #412–13. This evidence of intentional discrimination—including declarations

---

[2] Other accommodations like accommodated pilots voluntarily moving to the end of the bidding list or swapping schedules—as suggested by *Groff*—would not touch on the listed CBA provisions, so there was no need to dismiss the claims even if Defendants were correct on this point. *Crider*, 492 F. App'x. at 615.

accompanying the Complaint, *see, e.g.*, R.1-7, PageID #152—remains unrebutted.

Additionally, Plaintiffs' rebuttal is confirmed by the CBA: "Nothing contained in this Section 18.F prohibits the Company from reassigning a Crewmember to another aircraft during the duty period described above." R.44-2, PageID ##640–41.

The Magistrate converted the 12(b) Motion into a Rule 56 Motion. R.34, PageID ##480–84. Plaintiffs sought additional evidence—through a 56(d) Motion—to substantiate their intentional discrimination claims. R.38, PageID ##502–07. They requested "discovery (in addition to the facts already provided to the Court) that will illustrate Defendants' discrimination during what was a bad faith accommodation process— conduct that falls outside the RLA and will highlight Defendants' *ex post* attempt to use the CBA as a shield from liability when the pilot contract has never been followed previously under related circumstances." *Id.* at 504. Going further, Plaintiffs stressed that discovery would "include[] facts such as Defendants' regular business practice to allow pilots to fly without required vaccines prior to the COVID-19 vaccination requirement (*i.e.*, fly with an accommodation from any supposed vaccine

requirement)." *Id.* Obtaining such evidence was critical because, "[t]o the extent that the CBA's terms are even implicated—and, to be clear, they are not—applying a CBA in a discriminatory manner removes the RLA shield anyway." *Id.* at 505; *see also* Appendix B (detailing more than 45 citations to intentional discrimination arguments and facts—such as accommodating felons while denying religious pilots rescheduling—regarding Defendants' actions/motivations).

While rejecting most of Kalitta's arguments, the R&R accepted the claim that one potential accommodation—not scheduling unvaccinated pilots for unknown countries—conflicts with seniority rights. R.43, PageID #571. Given Plaintiffs' argument that Kalitta could schedule around the destination issue, the R&R argued that whether the Pilots' proposed accommodation violates the CBA was irrelevant. "What matters is whether the Court can decide their claims without 'interpreting' the CBA." *Id.* at 573. The Magistrate thought there was "no other option" than to schedule pilots to countries with vaccine-entry restrictions, *id.* at 574, yet the CBA states: "the Company **is not required** to assign a Crewmember to a trip if the Crewmember lacks the necessary visas, vaccines and permits to perform such work." R.44-2,

PageID #638. Moreover, voluntary schedule alteration was a simple accommodation even if Defendants had shown a CBA conflict with altering schedules.[3]

The panel affirmed, holding: (1) the RLA precludes Plaintiffs' failure to accommodate claims because CBA terms might need to be interpreted in the future; (2) Plaintiffs forfeited claims of intentional discrimination; and (3) Plaintiffs' perceived disability claim is precluded because CBA terms need to be considered or assessed. *Odell*, 2024 WL 3338349, at *4–7.

## ARGUMENT

The RLA precludes claims when interpreting a CBA resolves them. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994). In making that determination, this Court follows two rules relevant here. First, *referencing* a CBA's terms does not trigger preclusion. *See Powers v. Cottrell, Inc.*, 728 F.3d 509, 516 (6th Cir. 2013). Second, employers bear the burden of *demonstrating* a conflict between the CBA's terms and an

---

[3] *Groff* confirms the reversible error of *assuming* the existence of CBA conflicts requiring "interpretation." *See also Crider*, 492 F. App'x at 615 ("Summary judgment is inappropriate where . . . the employer inhibited, frustrated, or impeded volunteers from swapping shifts.").

accommodation.  *See Paul v. Kaiser Found. Health Plan of Ohio,* 701 F.3d 514, 522 (6th Cir. 2012); *Stanley v. ExpressJet Airlines, Inc.*, 808 F. App'x 351, 354–56 (6th Cir. 2020).  The panel cast both rules aside, concluding that Title VII/ADA claims are precluded if a defendant identifies CBA terms arguably requiring future interpretation.

Under Defendants' arguments—and the panel opinion—an employer need only point to CBA terms, describe a way in which they might foreclose all accommodations, and claim that confirming the terms' meaning will be an "interpretation" prohibited under *Norris*.  Under this approach, it is of no moment whether the employer's claim is true, whether the CBA terms apply, or whether the employer regularly does the exact thing it now complains violates the CBA.  Caselaw across the circuits rejects this approach.

Moreover, the uncontroverted evidence here is that: (1) the CBA allows the company to adjust pilot schedules without violating seniority; and (2) Kalitta does so to help felons avoid Canada and pilots with visa issues avoid China.  R.1-7, PageID #152; R.1-8, PageID #174; R.27-7, PageID ##412–13.  To claim, after the fact, that scheduling accommodations for religious/disabled pilots suddenly creates a CBA

problem is precisely the sort of mischief prohibited by other circuits. *See, e.g.*, *Carmona*, 536 F.3d at 349 (no preemption where CBA was applied in a "discriminatory manner" because "consideration of the CBA *as applied to Title VII and the ADA*—not interpretation of the CBA itself— is what is required to resolve" the claim (emphasis in original)). Such factual inquiries are outside the scope of CBA interpretation. *Lingle*, 486 U.S. at 407.

Rehearing is warranted to bring the Court into alignment with Supreme Court caselaw, prior Sixth Circuit holdings, and authority from other circuits.

## I. In Conflict With The Supreme Court And Multiple Circuits— Including This Court—The Panel Affirmed RLA Preclusion Based Solely On Defendants' Description Of CBA Terms.

### A. The Panel Implicitly Held that Referencing CBA Terms Triggers Preclusion.

While the panel notes the correct standard (at *4)—that only mentioning CBA terms is insufficient for RLA preclusion—the opinion provides three proofs for mere CBA references triggering preclusion here.

First, preclusion was affirmed based on a Table of Contents. Though Defendants had the burden of demonstrating the CBA was "inextricably intertwined" with Plaintiffs' claims, the panel

acknowledged Defendants did not provide the "relevant provisions" of the CBA. *Odell*, 2024 WL 3338349, at *2. If the "relevant" terms were not provided, Kalitta necessarily failed to meet its "burden of showing that the CBA is inextricably intertwined" with Plaintiffs' claims. *Id.* at *4.

To be sure, as the CBA's Table of Contents shows, there are seniority/bidding provisions in the contract. But the relevant contract term empowers the company to unilaterally change pilot destinations. R.44-2, PageID ##640–41. This case thus epitomizes why defendants must *show*—not merely "claim"—a conflict with the CBA. Additionally, not being held to that burden simultaneously allows defendants to escape their duty to "consider[] other options." *Groff*, 600 U.S. at 473.

Second, the panel's reliance on mere references to the CBA is seen in its affirmance that Plaintiffs' 56(d) request was "irrelevant to the issue to be decided." *Id.* at *5 n.8. Considering Plaintiffs sought evidence concerning *whether* the CBA terms applied, the panel's conclusion that the discovery was "irrelevant" can only be true if referencing a CBA term is all that is required for preclusion under the RLA. Only if a court cannot even read a CBA to see if it applies is Plaintiffs' discovery "irrelevant." Otherwise, discovery was relevant to Kalitta's intentional discrimination

and CBA misrepresentations (*i.e.*, pretext).  *See, e.g.*, R.38, PageID #505.

Discovery would also have ensured the "consideration of other options"

that *Groff* commands.  600 U.S. at 473.[4]

Third, in its treatment of the "perceived disability" claim, the panel

holds that determining pretext of Defendants' actions entails

"considering" or "assess[ing]" CBA terms.  *Odell*, 2024 WL 3338349, at

*7.  In the panel's own words, merely "considering" or "assess[ing]" CBA

terms triggers preclusion.

> **B.** **Allowing Mere Descriptions of CBA Terms to Justify Preclusion—Without Searching for Possible Accommodations—Creates Intolerable Conflicts.**

"[W]hen the meaning of contract terms is not the subject of dispute,

the bare fact that a collective-bargaining agreement will be consulted

. . . does not require the claim to be extinguished."  *Powers*, 728 F.3d at

516 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994)).  Rather,

the threshold for preclusion is definitive "interpretation" of a CBA

---

[4] The 56(d) Motion and Affidavit—*see* Appendix B—demonstrate significant "effort[s] to develop . . . statements [about Defendants' discrimination]."  *Odell*, 2024 WL 3338349, at *6.  It was error to prevent Plaintiffs from developing the record.

provision (*i.e.*, resolving actual conflict over terms). *See Stanley*, 808 F. App'x at 352.

Merely "considering" or "assess[ing]" CBA terms is not and has not been the standard for RLA preclusion anywhere—until now. *See, e.g.*, *Powers*, 728 F.3d at 516; *Yelder*, 2022 WL 18587845, at *2 ("[W]hile the trier of fact would need to refer to the CBA . . . there [i]s no need to interpret the terms of the CBA because neither party disputes the terms."); *Carmona*, 536 F.3d at 345 (holding no preclusion "[e]ven though a court would have to *refer to* the CBA"); *Brown*, 254 F.3d at 667–68 (claims not precluded merely because a court needs to weigh certain provisions of a CBA); *Felt*, 60 F.3d at 1419–21 (rejecting preemption where employer claimed action was "arguably justified" by CBA).

For good reason. Courts cannot simply take a defendant's word for it that an accommodation causes an undue hardship. A defendant must *show* a conflict requiring interpretation (*i.e.*, that there is no alternative). *See Groff*, 600 U.S. at 473; *Rabe*, 636 F.3d at 873.

Here, the only record evidence demonstrates the contested accommodation *is allowed by the CBA*. Yet the panel believed "[d]etermining whether adjusting flight schedules would constitute

undue hardship to Kalitta would necessarily require a court to interpret the CBA to determine whether, and to what extent, senior pilots' bidding preferences would be impacted." *Odell*, 2024 WL 3338349, at \*5. Simply put, those preferences cannot be impacted by Kalitta unilaterally rescheduling pilots—as the CBA proves and as Kalitta does not contest. There is thus nothing for a court to "interpret." Even worse, because the district court prematurely ended the inquiry, alternative accommodations were never shown to be impossible—it is thus unknown what CBA "interpretations" would be required (thus violating *Groff*).

There is now Sixth Circuit precedent allowing RLA preclusion if an employer merely references a CBA term it can argue is relevant to foreclose *one* accommodation path—this warrants rehearing.

## II. In Conflict With The Supreme Court And Multiple Circuits—Including This Court—The Panel Affirmed RLA Preclusion Without Considering Defendants' Discriminatory Application Of The CBA.

Separate from whether a CBA term relates to an accommodation, employers may not engage in discrimination and then hide behind the RLA. *Lingle*, 486 U.S. at 407.

It is reversible error to grant summary judgment if an employee's religious practices were a "motivating factor in the employer's decision."

*Abercrombie*, 575 U.S. at 772.  An employer may be found to violate Title VII if the employer's "desire to avoid providing the prospective accommodation [was] a motivating factor" in the decision.  *Id.* at 773–74.  This is precisely what Plaintiffs pled.  R.1, PageID ##3–12, 39, 49, 97.

Consistent with *Lingle* and *Abercrombie*, other circuits reject employers using the RLA as a shield where the CBA is applied in a "discriminatory manner."  In *Carmona*, the Fifth Circuit held preclusion was not triggered because "consideration of the CBA as applied to Title VII and the ADA—not interpretation of the CBA itself—is what is required to resolve" the claims.  536 F.3d at 345–46.  Some discrimination claims "cannot be conclusively resolved looking at the collective bargaining agreement, but instead require a factual examination of the defendant's acts and motivation."  *Nguyen v. United Air Lines, Inc.*, 2010 WL 2901878, at *3–4 (W.D. Mich. July 23, 2010) (*citing Carmona*, 536 F.3d at 345–46).  Similarly, the Seventh Circuit rejected preemption in *Rabe* where "[t]he collective bargaining agreement [wa]s relevant [but the CBA] was enforced . . . in a discriminatory manner."  636 F.3d at 873.

Here, Plaintiffs submitted evidence that Kalitta applied the CBA in a discriminatory manner and was "motivated" to avoid accommodating

religious employees, though the company regularly accommodates felons. *See* R.1-7, PageID #152; R.1-8, PageID #174; R.27-7, PageID ##412–13; Appendix B. Evidence of this one-way street of accommodations is uncontroverted. And long before Defendants invoked the RLA, Kalitta's CEO promised no religious/medical accommodations—evidence of a facially discriminatory policy. R.1, PageID #26.[5]

A factfinder can already infer Kalitta was "motivated" to avoid accommodating exempt employees—Defendants' discrimination took place in the context of Plaintiffs requesting accommodations. And such action overcomes any RLA interpretive defense, especially when discovery is denied concerning discrimination as a "motivating factor" in Defendants' actions. The panel opinion thus warrants rehearing.

## III. The Panel Opinion Has Profound Implications.

Plaintiffs should not have fewer federal rights simply because they live in Michigan. And the pilots' union confirmed these claims do not arise under the CBA—thus, there is no relief available in a grievance

---

[5] There was also circumstantial evidence of discrimination. Exempt employees helping oppose the company's discrimination experienced witness intimidation and even an apparent murder attempt. R.31, PageID ##463–69.

process.  Absent rehearing, Plaintiffs' rights will be extinguished by the intentional discrimination of Defendants who hid behind the RLA without any evidence *demonstrating* a CBA conflict.

The panel is not just wrong on the law, though.  The published opinion undermines RLA principles in this Circuit and calls into question myriad district court opinions holding employers accountable for intentional discrimination.  It also weakens Title VII/ADA rights for all employees in the Sixth Circuit subject to a CBA.  Employers will be emboldened to discriminate and avoid accountability under the RLA because now they need only reference CBA terms to sidestep liability.

Rights under Title VII and the ADA should not vary by circuit and rehearing is warranted on these important questions.

## IV.  Panel Rehearing Is Warranted Because—As Both The Record And Caselaw Demonstrate—Plaintiffs Did Not Forfeit Intentional Discrimination Claims.

Finally, the panel held Plaintiffs "forfeited the intentional discrimination claim they bring on appeal."  *Odell*, 2024 WL 3338349, at *6.  This conclusion is erroneous for at least three reasons.[6]

---

[6] Petitioners argued both discrimination related to CBA application and, "[a]lternatively," stand-alone discrimination claims.  Appellants'

First, intentional discrimination was raised with the district court as evidenced in the R&R. The Magistrate knew "pilots with prior felony convictions cannot enter Canada" and that Kalitta accommodates those pilots. R.43, PageID #572. The court simply thought this discriminatory application constituted an "industry practice" adopted into the CBA, thus concluding "the Court cannot decide the Pilot's *discrimination claims* without interpreting the CBA." *Id.* at 573 (emphasis added).

Second, while the panel faulted Plaintiffs for not "set[ting] forth a comprehensible disparate-treatment or intentional-discrimination claim," *Odell*, 2024 WL 3338349, at *6, *Abercrombie* confirms Plaintiffs' Title VII claims are just that. 575 U.S. at 771 (noting disparate treatment (*i.e.*, intentional discrimination) and disparate impact "are the only causes of action under Title VII"). Plaintiffs' claims are intentional discrimination claims. Moreover, allegations in the Complaint, sworn declarations accompanying the Complaint demonstrating direct-evidence discrimination, and the failure to accommodate claims all show intentional discrimination—it was motivating Kalitta's "no

_____

Opening Br. at 43–61. Even if "stand alone" claims were forfeited—and they were not given the facts pled—intentional discrimination in the CBA/accommodation context was not.

accommodation" policy. R.1-7, PageID #152; R.1-8, PageID #174; R.42, PageID ##535–36. As another example, Plaintiffs highlighted Kalitta's Vice President stating: "Even if [employees entitled to an accommodation] could come back, *we don't want them back*." R.1, PageID #4–5. And, under *Abercrombie*, the facts concerning Kalitta's accommodation of felons—but not religious employees—certainly underscore the broader point that the company intentionally discriminated against Plaintiffs. R.27-7, PageID ##412–13.

Third, the record is clear that Plaintiffs preserved intentional discrimination claims by pleading specific discriminatory facts and by making requests for discovery concerning intentional discrimination and potential accommodations. *See* Appendix B; *see also Savel v. MetroHealth Sys.*, 96 F.4th 932, 944 (6th Cir. 2024) (holding disparate treatment claim alleged "by detailing a 'specific event[]' where Plaintiffs . . . were 'treated differently' than their nonreligious 'counterparts'").

Kalitta's intentional discrimination was set in the context of the failure to accommodate. To the extent a stand-alone intentional discrimination claim was not fully developed in the Complaint—even assuming it must be—that is because Kalitta's RLA argument is an *ex*

*post* litigation tactic. And Plaintiffs were never allowed to amend. Nevertheless, the Complaint explains that failing to accommodate religious/disabled pilots required treating them "differently" than "their nonreligious counterparts" needing to avoid Canada or China. This "specific event" is sufficient to make out a disparate treatment claim. *Savel*, 96 F.4th at 944.

In this unusual procedural posture, Plaintiffs are held only to a notice pleading standard—satisfied here. Moreover, a complaint need not plead legal theories. *Johnson v. City of Shelby,* 574 U.S. 10, 12 (2014). Even so, as soon as Kalitta offered its misleading CBA argument, Plaintiffs immediately countered that such a claim involved discriminatory application of the CBA and that discovery would demonstrate these facts. *See, e.g.*, Appellants' Opening Br. at 19–20, 43; R.38-1, PageID ##503–05); R.42, PageID ##535–36. Rehearing is warranted.

## CONCLUSION

The petition should be granted.

July 23, 2024    Respectfully submitted.

/s/ John C. Sullivan

John C. Sullivan
**S | L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX  75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

Walker D. Moller
**SIRI | GLIMSTAD**
1005 Congress Avenue,
Suite 925-C36
Austin, TX 78701
wmoller@sirillp.com

*Counsel for Petitioners*

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Petition for Rehearing En Banc with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system on July 23, 2024. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ John C. Sullivan*

John C. Sullivan
**S | L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

*Counsel for Petitioners*

**CERTIFICATE OF COMPLIANCE**

As required by Fed. R. App. P. 32(g) and 6th Cir. R. 32(a), I certify that this Brief contains 3896 words. This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in 14-point Century Schoolbook font using Microsoft Word.

*/s/ John C. Sullivan*
_____

John C. Sullivan
**S | L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

*Counsel for Petitioners*

# Appendix A

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0148p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

ROBERT W. ODELL, JR., et al.,

*Plaintiffs,*

KEVIN WEBBER; AUSTIN ROBERT ISAAC HUDNUTT;
CHRISTIAN TOUGAS; CHARLES CHRISTIAN GALTON;
ESTATE OF KEVIN MCALLISTER,

*Plaintiffs-Appellants,*

v.

KALITTA AIR, LLC; CONRAD KALITTA, in his official
capacity,

*Defendants-Appellees.*

No. 23-1703

———————————

Appeal from the United States District Court for the Eastern District of Michigan at Bay City.
No. 1:22-cv-12290—Thomas L. Ludington, District Judge.

Argued: March 21, 2024

Decided and Filed: July 9, 2024

Before: BATCHELDER, MOORE, and CLAY, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** John C. Sullivan, S | L LAW PLLC, Cedar Hill, Texas, for Appellants. Nicholas C. Bart, FITZPATRICK & HUNT & PAGANO, Chicago, Illinois, for Appellees. **ON BRIEF:** John C. Sullivan, S | L LAW PLLC, Cedar Hill, Texas, Walker Moller, SIRI GLIMSTAD, Austin, Texas, for Appellants. Nicholas C. Bart, FITZPATRICK & HUNT & PAGANO, Chicago, Illinois, George W. Kelsey, KELSEY LAW GROUP, P.C., Belleville, Michigan, for Appellees.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge.  During the COVID-19 pandemic and in response to Executive Order 14042, Kalitta Air, LLC ("Kalitta") implemented a vaccine mandate for all of its employees.  Kalitta purportedly granted religious and medical accommodations to the mandate by providing employees with three and twelve months, respectively, of unpaid leave, after which employees would be terminated if they remained unvaccinated.  Eleven employees, ("Plaintiffs"), including five pilots (the "Pilot Plaintiffs"), sued Kalitta under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"), claiming that the mandate discriminated against them on the basis of their religious beliefs and/or disabled status.  The district court found that, because the Pilot Plaintiffs were subject to a collective bargaining agreement ("CBA"), the Railway Labor Act ("RLA") precluded it from hearing certain of their Title VII and ADA claims, which must first go through arbitration as minor disputes.  The Pilot Plaintiffs timely appealed.  The other six Plaintiffs' claims are not before this court on appeal.  We AFFIRM the district court's Order regarding the Pilot Plaintiffs.

## I. BACKGROUND

### A.  Kalitta's Vaccine Requirement

Kalitta is a cargo airline that is headquartered in Ypsilanti, Michigan, and is owned by Conrad Kalitta ("Conrad").  R. 1 (Compl. ¶¶ 44–45) (Page ID #21).  On October 11, 2021, Kalitta issued an employee notice in response to the COVID-19 pandemic and Executive Order 14042 ("EO 14042"), stating that "Kalitta would be complying with the EO and that every employee would have to be vaccinated."  R. 1-2 (Odell Decl. ¶¶ 10–12) (Page ID #105–06).  The Kalitta notice also stated that employees "who [were] unable to receive a vaccination, due to a disability or a sincerely held religious belief, can request an accommodation . . . by October 31, 2021, and will be placed on an unpaid leave effective December 8, 2021."  *Id.* ¶ 12 (Page ID #105–06) (emphasis omitted).

On October 15, 2021, Conrad circulated a letter to Kalitta employees stating that pursuant to EO 14042, all Kalitta employees were required to be vaccinated by December 8, 2021.  R. 26-4 (Oct. 15, 2021 Letter) (Page ID #357).  The letter explained that after "consulting with legal firms," Conrad believed that if Kalitta did not comply with EO 14042 it would "lose all current and future Federal contracts," would be "prevented from doing business with" numerous companies, and could run into issues with foreign countries that were "beginning to require proof of vaccination."  *Id.*  Conrad also offered a $1,000 payment to employees who had been or would be "fully vaccinated by the December 8th deadline."  *Id.*  On an October 19, 2021 conference call, Kalitta's Vice President of Human Resources allegedly stated that even if employees who had received an accommodation could return to work, Kalitta did not "want them back."  R. 1-9 (Tougas Decl. ¶¶ 8–9) (Page ID #166–67).

Employees who submitted a request for an exemption from the vaccine mandate for "religious, ethical, moral, [or] personal beliefs" received a letter from Kalitta stating that their exemption was granted.  *See* R. 26-5 (Nov. 2, 2021 Religious Exemption Letter) (Page ID #359) (emphasis omitted).  Kalitta's accommodation for these employees consisted of "an unpaid leave of absence starting December 9, 2021 for ninety (90) days," after which the employee could either "voluntarily resign or . . . be terminated."  *Id.*  Employees who applied for medical exemptions received unpaid leave for twelve months, after which they could similarly voluntarily resign or be terminated.  R. 26-6 (Nov. 2, 2021 Medical Exemption Letter) (Page ID #361).  Kalitta announced that, after November 24, 2021, it would seek to fill unvaccinated employees' positions, and that the employees could apply for reemployment but were not guaranteed a return to the company.  *Id.*; R. 26-5 (Nov. 2, 2021 Religious Exemption Letter) (Page ID #359).  Attached to Kalitta's "Approval" letters was a Frequently Asked Questions document, which explained that the vaccine requirement also applied to fully remote workers and "employees with a prior COVID-19 infection."  R. 1-2 (Odell Decl. ¶¶ 23–24) (Page ID #108).

## B.  Railway Labor Act and Kalitta's Collective Bargaining Agreement

The Railway Labor Act ("RLA") governs and provides remedies for labor disputes in the airline industry.  45 U.S.C. §§ 151, 181–82.  Labor disputes are divided into two categories:

(1) major disputes, which "concern the formation of collective bargaining agreements [("CBAs")]"; and (2) minor disputes, which deal with interpreting existing CBAs. *Emswiler v. CSX Transp., Inc.*, 691 F.3d 782, 785 (6th Cir. 2012). Minor disputes are initially settled through "contractually agreed-upon grievance procedures," or "'on the property' remedies." *Id.* If they are not resolved "on the property," minor disputes must be resolved through arbitration by either the National Railroad Adjustment Board ("Board") or "a privately established arbitration panel." *Id.* Judicial review of the Board's decision is restricted to: "(1) failure of the Adjustment Board to comply with the requirements of the [RLA]; (2) failure of the Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption." *Id.* (quoting *Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 93 (1978)).

Kalitta has a CBA in place with the Air Line Pilots Association, International ("ALPA"), that governs the Pilot Plaintiffs and that includes several sections which the Defendants argued could be impacted by Kalitta's COVID-19 policy, including Sick Leave (§ 7); Physical Examinations (§ 11); Leaves of Absence (§ 12); Seniority (§ 13); Scheduling (§ 17); Hours of Service (§ 18); and Resolution of Disputes (§ 20). R. 19 (Defs.' Mot. to Dismiss at 17) (Page ID #262); *see also generally* R. 19-2 (CBA Excerpts) (Page ID #275–318). Neither Kalitta nor the Pilot Plaintiffs provided a full text of Kalitta's CBA (or even the relevant provisions). Under the CBA, pilots use a "seniority-based bidding system" to create their flight schedules. R. 19 (Defs.' Mot. to Dismiss at 17–18) (Page ID #262–63). This bidding system allows pilots to "submit preferences for" scheduling options, such as "dates and length of travel, routes, layovers[,] and aircraft type." *Id.* The CBA also provides that Kalitta "is not required to assign a Crewmember to a trip if the Crewmember lacks the necessary visas, vaccines and permits to perform such work," and that Kalitta "will use reasonable efforts to assist Crewmembers to obtain the necessary visas, vaccines, and permits." R. 19-2 (CBA Excerpts at 9) (Page ID #295). Kalitta stated that granting accommodations to pilots could frustrate the seniority-based bidding process if Kalitta had to start altering schedules to account for unvaccinated pilots, which would lead it to "violate the foregoing procedures and systems under the CBA." R. 19 (Defs.' Mot. to Dismiss at 15, 17–18) (Page ID #260, 262–63).

On November 24, 2021, ALPA filed a grievance claiming that Kalitta's vaccine mandate violated Sections 1.A, 4, and 11 of the CBA.  R. 19-3 (Nov. 24, 2021 ALPA Grievance at 1) (Page ID #320).  In a later email, ALPA's Senior Labor Relations Counsel stated that the proper avenue for those with an exemption to protest an accommodation (or lack thereof) was "through an EEOC complaint," rather than through the CBA's grievance system.  R. 27-4 (Dec. 13, 2021 ALPA Email) (Page ID #403); *see also* R. 42-2 (ALPA Nov. 8, 2021Vaccine Update at 3) (Page ID #547).  For pilots who "were terminated for being unvaccinated and who also did not have an exemption," though, ALPA pursued a grievance pursuant to the CBA.  R. 27-4 (Dec. 13, 2021 ALPA Email) (Page ID #403); *see also* R. 30-1 (ALPA Grievance (Griffin) at 1–2) (Page ID #443–44).  When Kalitta did not respond to the grievance, ALPA then appealed to the System Board of Adjustment regarding at least four individual Kalitta pilots.  *See, e.g.*, R. 30-1 (ALPA Grievance Appeal (Griffin) at 1–3) (Page ID #445–47).[1]

## C.  Procedural History

In September 2022, the eleven Plaintiffs, who had requested an accommodation and received a Religious or Medical Exemption letter, brought a putative class action against Kalitta and Conrad, claiming that Kalitta had failed to comply with Title VII and the ADA.  R. 1 (Compl. ¶¶ 2–3) (Page ID #2–3).[2]  The employees claimed that Kalitta's placing them on unpaid leave "was not a reasonable accommodation" and demonstrated "the company's discriminatory intent."  *Id.* ¶ 3 (Page ID #2–3).  They also alleged that Kalitta had the ability to make reasonable accommodations, such as regular testing, "recogniz[ing] natural immunity," masking, or not scheduling unvaccinated pilots for flights to countries requiring vaccination, and that Kalitta's justifications for failing to use these alternatives were "pretextual and unsupported by fact."  *Id.* ¶¶ 18–22, 212 (Page ID #9–12, 72).  The Plaintiffs' complaint included five Counts:  (1) Count I, Religious Discrimination—failure to provide reasonable accommodation; (2) Count II, Religious discrimination—retaliation; (3) Count III, Disability discrimination—failure to accommodate; (4) Count IV, Disability discrimination—retaliation;  and  (5) Count V,  Disability

---

[1]Based on the available record, it does not appear that any of the Pilot Plaintiffs are involved in this process.

[2]To date, this class has not been certified.

discrimination—discrimination based on perceived disability. R. 1 (Compl. ¶¶ 272–318) (Page ID #89–97).

On December 2, 2022, Kalitta filed a Motion to Dismiss the Plaintiffs' Complaint for lack of subject-matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1) and the RLA, arguing that the Pilot Plaintiffs'[3] claims were precluded and had to be brought before an arbitrator. R. 19 (Defs.' Mot. to Dismiss at 13–15) (Page ID #258–60). The magistrate judge construed the motion to dismiss as a motion for summary judgment and gave the parties leave to supplement their briefing or seek additional time to conduct discovery. R. 34 (Notice of Intent at 4) (Page ID #483). The Defendants rested on their initial briefs, R. 37 (Defs.' Notice of Waiver at 2) (Page ID #500), but the Plaintiffs requested that the magistrate judge defer consideration pending additional discovery, R. 38 (Pls.' Mot. to Den. or Defer at 2) (Page ID #503). The Defendants opposed the motion and asked for a ruling on the motion for summary judgment. R. 41 (Defs.' Resp. in Opp'n at 3) (Page ID #518). The magistrate judge issued a Report and Recommendation determining that the RLA precluded the court from hearing the merits of the Pilot Plaintiffs' Counts I, III, and V (Title VII and ADA claims for failure to accommodate and ADA claim for discrimination based on perceived disability, respectively) because they were "minor disputes" that would require the court to interpret the CBA. *Odell v. Kalitta*, 678 F. Supp. 3d 904, 911–12, 920 (E.D. Mich. 2023) (adopting the magistrate judge's Report and Recommendation in full after conducting de novo review)[4]. The magistrate judge explained that adjusting the Pilot Plaintiffs' schedule to provide their requested accommodations could impact the CBA's "seniority-based bidding system," and that determining whether this was a sufficiently undue hardship would require interpretation of the CBA's terms. *Id.* at 919. The

---

[3] The five Pilot Plaintiffs are: Kevin Webber (religious accommodation requested); Austin Robert Isaac Hudnutt (religious accommodation requested); Christian Tougas (religious and medical accommodations requested); Charles Galton (attempted to request religious accommodation); and Kevin McAllister (religious accommodation requested). R. 43 (R. & R. at 30) (Page ID #585); *see also* R. 49 (Clarifying Order at 2) (Page ID #799). The magistrate judge dismissed Charles Galton and Kevin McAllister from the case entirely because they did not bring retaliation claims, the only remaining claims in the litigation. R. 43 (R. & R. at 30) (Page ID #585). Kevin McAllister is since deceased. Appellee Br. at 2.

[4] The magistrate judge determined that Counts II (religious discrimination—retaliation) and IV (disability discrimination—retaliation) did not require a court to interpret the CBA and recommended denying the motion for summary judgment as to these two counts. *Odell*, 678 F. Supp. 3d at 911–12. On appeal, Kalitta does not challenge this ruling because it is not part of the Federal Rule of Civil Procedure 54(b) final judgment.

magistrate judge also recommended that the district court issue its summary-judgment ruling without additional discovery because "[a]ll of the additional evidence sought by the Pilots is irrelevant to Kalitta's motion." *Id.* at 924. The district court adopted the magistrate judge's Report and Recommendation. *Id.* at 911–12; *see also* R. 49 (Clarifying Order at 1–3) (Page ID #698–700).[5]

## II. DISCUSSION

### A. Standard of Review

We review de novo the issue of subject-matter jurisdiction. *Flight Options, LLC v. Int'l Brotherhood of Teamsters, Local 1108*, 863 F.3d 529, 538 (6th Cir. 2017). Likewise, we review de novo a district court's grant of summary judgment. *Emswiler*, 691 F.3d at 788. "Summary judgment is appropriate where there is 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). The district court could reach the merits of the Pilot Plaintiffs' claims and grant relief only if it did not have to interpret the CBA in order to resolve the claims. *Cf. id.* at 792 ("If [the plaintiff's] . . . discrimination claim is preempted by the RLA, then he is required to pursue the RLA-mandated arbitral process before bringing his claim to court, and his failure to do so precludes consideration of the merits.").[6]

---

[5]After the district court issued an Opinion and Order adopting the magistrate judge's Report and Recommendation, R. 45 (Op. & Order) (Page ID #642–45), the district court issued an additional order, clarifying that its Opinion and Order was "final as to the dismissed claims [Claims I, III, and V] and parties," R. 49 (Clarifying Order at 1) (Page ID #798). The district court confirmed that "finality under [Federal Rule of Civil Procedure] 54(b) [was] apt" with regards to the remaining claims and stated its belief that the issue of preclusion "should be decided before the parties advance to discovery." *Id.* at 1–2 (Page ID #798–99).

[6]The RLA potentially precludes causes of action that arise out of a federal statute and potentially preempts causes of action that arise out of state law. *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 259 n.6 (1994). We have tended to use the two terms interchangeably when referring to RLA claims. *See Stanley v. ExpressJet Airlines, Inc.*, 808 F. App'x 351, 352 n.1 (6th Cir. 2020). The only claims on appeal are causes of action that arise out of federal statutes, so we use "preclusion" throughout this opinion when referring to the Pilot Plaintiffs' claims. In *Hawaiian Airlines*, the Supreme Court applied a case dealing with preclusion to a preemption issue, stating that the distinction did not "rob" the preclusion case "of its force in this context," reasoning that the "[p]rinciples of federalism demand no less caution in finding that a federal statute pre-empts state law." *Hawaiian Airlines*, 512 U.S. at 259 n.6.

**B. Claims of Failure to Accommodate (Counts I & III)**

The Pilot Plaintiffs first argue that the district court erred when it found that it would have to evaluate their CBA in order to issue a ruling on the merits with regards to their Title VII and ADA claims of failure to accommodate. Appellant Br. at 30. They allege that, although the court may have to look at the CBA's terms, the RLA does not preclude federal-court jurisdiction because the CBA does not conclusively resolve their claims. *Id.* Kalitta maintains that because the Pilot Plaintiffs' claims require a decisionmaker to interpret the CBA, the RLA mandates that the dispute be settled through arbitration. Appellee Br. at 17. We hold that the Pilot Plaintiffs' Title VII and ADA claims of failure to accommodate require interpretation of the CBA, and that the RLA precluded the district court from hearing these claims.

Mere mention of a CBA does not suffice to prevent employees' claims from being heard in federal court. If an employee's "'action is based on a matrix of facts which are inextricably intertwined with the grievance machinery of the [CBA] and of the R.L.A.,' exclusive jurisdiction of the [Board] preempts the action." *Stephens v. Norfolk & W. Ry. Co.*, 792 F.2d 576, 580 (6th Cir. 1986) (quoting *Magnuson v. Burlington N., Inc.*, 576 F.2d 1367, 1369 (9th Cir. 1978)); *see also Paul v. Kaiser Found. Health Plan of Ohio*, 701 F.3d 514, 522 (6th Cir. 2012) (applying the "inextricably intertwined" test in the context of the Labor Management Relations Act); *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994) (same).[7] We use a two-part test to determine if a CBA precludes a claim: (1) "whether proof of the . . . claim would require interpretation of the CBA; and (2) whether the right claimed by [the] plaintiff is created by the [CBA] or by [federal] law." *Emswiler*, 691 F.3d at 792; *see also DeCoe*, 32 F.3d at 216 (applying the test in the context of the Labor Management Relations Act). If an employee can show all the elements of their claim without invoking the CBA's terms, that claim is sufficiently independent of the CBA and can be heard by a federal court. *DeCoe*, 32 F.3d at 216.

---

[7]Because both the RLA and LMRA preempt state-law claims implicating the meaning of CBA terms, we have frequently incorporated the standards governing preemption under the LMRA to address preemption and preclusion under the RLA. *See Emswiler v. CSX Transp., Inc.*, 691 F.3d 782, 792 (6th Cir. 2012); *Stanley*, 808 F. App'x at 355.

When evaluating whether a claim is "inextricably intertwined" with the CBA, we have considered factors such as whether a litigant is "party to the CBA," *Powers v. Cottrell, Inc.*, 728 F.3d 509, 517 (6th Cir. 2013); whether the plaintiffs' claims "invoke rights or procedures under the CBA," *id.* at 517–18; and whether, even if resolving a claim "will not involve the direct interpretation" of a CBA's terms, doing so will "nonetheless require the court 'to address relationships that have been created through the collective bargaining process and to mediate a dispute founded upon rights created by a CBA,'" *Paul*, 701 F.3d at 522 (quoting *DeCoe*, 32 F.3d at 218)); *see also Stanley v. ExpressJet Airlines, Inc.*, 808 F. App'x 351, 355 (6th Cir. 2020) (applying *DeCoe* to an RLA case). Employers cannot claim that every employment dispute is precluded simply because a CBA provision is "tangentially involve[ed]," *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211–12 (1985), or because of "the bare fact that a [CBA] will be consulted in the course of . . . litigation," *Powers*, 728 F.3d at 516 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994)). Kalitta bears the burden of showing that the CBA is inextricably intertwined with the Pilot Plaintiffs' claims, but Kalitta cannot establish preclusion just by asserting the CBA as an affirmative defense if those claims are otherwise independent of the CBA. *Paul*, 701 F.3d at 522.

We begin by looking at the elements of the Pilot Plaintiffs' Title VII and ADA claims, to determine if resolving them requires us to interpret the CBA. Under Title VII, it is unlawful for employers to discriminate against individuals because of their religion. 42 U.S.C. § 2000e-2(a)(1). Similarly, the ADA prohibits employers from discriminating against qualified individuals "on the basis of disability." 42 U.S.C. § 12112(a). The two statutes require employers to provide reasonable accommodations for religious beliefs or disabilities, respectively. If, however, an employer can demonstrate that providing such an accommodation to an individual with a protected characteristic would pose undue hardship to the operation of their business, they are not required to do so. 42 U.S.C. § 2000e(j) (Title VII); 42 U.S.C. § 12112(b)(5)(A) (ADA); *see also Groff v. DeJoy*, 600 U.S. 447, 468 (2023) (defining "undue hardship" under 42 U.S.C. § 2000e(j)). On appeal, both parties focus on whether a decisionmaker must interpret the CBA in order to determine whether granting an accommodation would impose an undue hardship on Kalitta under Title VII and/or the ADA. *See* Appellant Br.

at 23–25; Appellee Br. at 27–30.  For the purposes of this appeal, we assume that the Pilot Plaintiffs have made out their prima facie cases under Title VII and ADA.

The Pilot Plaintiffs' claims under Title VII and the ADA are created by federal law, rather than the CBA, and are precluded only if resolving the claims would require a court to interpret the CBA.  The district court dismissed the notion that three of the four accommodations that the Pilot Plaintiffs proposed (regular COVID-19 testing, masking, and obtaining natural immunity) would require it to interpret the CBA.  *Odell*, 678 F. Supp. 3d at 918.  It found, however, that the fourth proposed accommodation (that Kalitta not schedule unvaccinated pilots on flights to countries with vaccine requirements) "could displace the bids of other Kalitta pilots and impinge their seniority rights" and accordingly "would necessarily entail interpreting the CBA." *Id.* at 919.  On appeal, the Pilot Plaintiffs claim that granting an accommodation to the vaccine mandate would not require interpreting the CBA, because Kalitta pilots do not have "bidding, scheduling, or seniority rights that lock in a preferred flight route" and the CBA is "only incidental to [their] overriding discrimination claim."  Appellant Br. at 31–32.  Kalitta argues that granting such accommodations would "require it to violate multiple procedures and systems under the CBA, including, but not limited to, seniority, bidding[,] and scheduling." Appellee Br. at 21.

Under our precedent, requiring an employer to violate a CBA by taking actions that would affect seniority provisions can impose an undue hardship on that employer.  *Virts v. Consol. Freightways Corp. of Del.*, 285 F.3d 508, 521 (6th Cir. 2002).  Although the recent Supreme Court decision in *Groff v. DeJoy* altered the *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977), framework that the *Virts* decision applied, employers are still not responsible for providing an accommodation if they can prove that doing so would impose a substantial hardship to their business.  *Groff*, 600 U.S. at 468.  The Pilot Plaintiffs argue that no such burden exists here because the CBA does not grant pilots seniority rights with regards to destinations, so adjusting schedules to ensure that unvaccinated pilots would not fly to countries with vaccine mandates would, at most, tangentially involve the CBA.  Appellant Br. at 36.  However, pursuant to the CBA, Kalitta operates a "Bid Seniority List," R. 19-2 (CBA Excerpts at 11) (Page ID #297), which Kalitta claims allows pilots to submit their preferences for "dates and length of

travel, routes, layovers[,] and aircraft type," Appellee Br. at 12 (quoting R. 19-2 (CBA Excerpts at 7–8, 24–28) (Page ID #280–81, 297–301)). Determining whether adjusting flight schedules would constitute a sufficiently undue hardship to Kalitta would necessarily require a court to interpret the CBA to determine whether, and to what extent, senior pilots' bidding preferences would be impacted. *Cf. Paul*, 701 F.3d at 523; *see also Stanley*, 808 F. App'x at 356. Because the Pilot Plaintiffs' Title VII and ADA failure-to-accommodate claims cannot be resolved in full without interpreting the CBA, we hold that they are minor disputes and that we are therefore precluded from resolving these claims. We AFFIRM the district court's judgment.[8]

## C. Claims of Intentional Discrimination

On appeal, the Pilot Plaintiffs also claim that the magistrate and district judges focused only on their failure-to-accommodate claims, but that Kalitta had also applied the CBA in a discriminatory manner and was "on notice that it would face intentional discrimination claims." Appellant Br. at 54–58. The Pilot Plaintiffs argue that Kalitta "regularly arrang[ed] schedules" for pilots to ensure that those pilots were not flying to countries that they could not enter "for secular reasons," but "would never adjust [Pilot] Plaintiffs' schedules after they announced their religious objections." Appellant Br. at 56. Kalitta claims that the Pilot Plaintiffs forfeited their intentional discrimination claims because they first made such an argument in their Objections to the magistrate judge's Report and Recommendation. Appellee Br. at 33. In reply, the Pilot Plaintiffs claim that they "repeatedly advanced" their intentional discrimination claims to the magistrate judge before she issued the Report and Recommendation, citing their Opposition to the Motion to Dismiss, Motion for 56(d) Relief, and Reply in Support of Motion for 56(d) Relief in addition to their Objections to the magistrate judge's Report and Recommendation. Appellant Reply Br. at 19–20.

---

[8]On appeal, the Pilot Plaintiffs briefly raise a challenge to the district court's denial of their motion for additional discovery before ruling on Defendants' summary-judgment motion. Appellant Br. at 42–43. The district court, however, did not abuse its discretion in denying this request for additional discovery because it properly found that the discovery identified by the Pilot Plaintiffs would have been "irrelevant to the underlying issue to be decided." *In re Bayer Healthcare & Merial Ltd. Flea Control Prod. Mktg. & Sales Pracs. Litig.*, 752 F.3d 1065, 1074 (6th Cir. 2014).

When a party has "adverted to [an issue] in a perfunctory manner, unaccompanied by some effort at developed argumentation," we consider them to have forfeited the claim. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regul. Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995)). It is not for the court to "put flesh on [an argument's] bones." *Id.* at 996. Complaints do "not need to expressly plead legal theories," but rather must "plead factual allegations that impliedly establish[] at least one viable theory." *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1160 (6th Cir. 2021). If a party raises an issue for the "first time in objections to [a] magistrate judge's report and recommendation," we generally consider it to be forfeited. *Morgan v. Trierweiler*, 67 F.4th 362, 367 (6th Cir. 2023) (alteration in original) (quoting *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000)).

We hold that the Pilot Plaintiffs have forfeited the intentional discrimination claim they bring on appeal. The Pilot Plaintiffs' Complaint does not appear to allege specifically that they were subject to intentional discrimination, apart from the retaliation claims in Counts II and IV that are not before us on appeal. In their brief, the Pilot Plaintiffs claim that they sufficiently alleged that they had been subjected to intentional discrimination, both via a disparate-treatment theory and through "direct evidence of unlawful discrimination." Appellant Br. at 54–59. Although they point to sections from their Complaint that they argue support their theory, *see* Appellant Br. at 55–56, 58–60, as well as from other filings with the district court, Appellant Reply Br. at 19, the Pilot Plaintiffs did not set forth a comprehensible disparate-treatment or intentional-discrimination claim before the magistrate judge issued her Report and Recommendation. The closest we can find in the cited documents is a statement that the "Defendants can *still* be liable under Title VII for intentional discrimination, even if they are permitted to pretextually invoke the CBA." R. 42 (Pls.' Reply in Supp. of Their Mot. to Den. at 4) (Page ID #535). In the complaint itself, the Pilot Plaintiffs did nothing more than state that Kalitta's "discriminatory actions were intentional and/or reckless" in both of its failure-to-accommodate claims, without any effort to develop these statements further. R. 1 (Compl. ¶¶ 281, 300) (Page ID #91, 94). There is no attempt in the complaint to establish that Pilot Plaintiffs are bringing a disparate-treatment claim. Because the Pilot Plaintiffs, at most, perfunctorily adverted to a distinct disparate-treatment or intentional-discrimination claim prior

to the magistrate judge issuing her Report and Recommendation, we hold that they forfeited this claim and that the district court did not err in adopting the magistrate judge's Report and Recommendation without considering this claim further.

## D. Claim of Discrimination Based on Perceived Disability (Count V)

Finally, the Pilot Plaintiffs argue that the district court erred in determining that their claim that they had been discriminated against "based on perceived disability," R. 1 (Compl. at 95) (Page ID #95), required it to interpret the CBA and was precluded by the RLA. Instead, they contend, the inquiry should focus on "Kalitta's discriminatory actions," rather than reasonable accommodation and undue hardship. Appellant Br. at 62. We hold that evaluating the merits of the Pilot Plaintiffs' regarded-as or perceived-disability claim will require a court to interpret the CBA's terms to reach a conclusion, and we affirm the district court's judgment.

The ADA's definition of "disability" includes: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The Plaintiffs allege that they were "regarded as" having an impairment and were subsequently denied reasonable accommodations. R. 1 (Compl. ¶¶ 311–17) (Page ID #96–97). We have stated that "regarded-as" claims do not require an "inquir[y] into 'reasonable accommodations,'" although the "plaintiff still must show that they are 'qualified' for a position." *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 320 n.8 (6th Cir. 2019). However, ruling on the merits of the Pilot Plaintiffs' "regarded as" claims will still eventually require that a decisionmaker evaluate the CBA. If the Pilot Plaintiffs can make out a prima facie case that Kalitta discriminated against them because it regarded them as disabled, then under the *McDonnell Douglas* burden-shifting framework Kalitta will have to proffer a nondiscriminatory reason for its actions, which the Pilot Plaintiffs will then have to demonstrate is pretextual. *See id.* at 319–20. This, subsequently, will entail considering the CBA's relevant provisions surrounding accommodations to evaluate Kalitta's obligations under the CBA in order to determine whether Kalitta's actions are pretexual. The Pilot Plaintiffs' as-regarded claim is therefore precluded by the RLA.

Although they attempt to construe their argument as one challenging Kalitta's motives, the Pilot Plaintiffs would also not be able to operate in the same way that the other employees would absent an accommodation, because some countries had implemented vaccine requirements that the Pilot Plaintiffs would not be able to fulfill. Because the Pilot Plaintiffs were fired and would, in fact, need an accommodation to continue their full employment, we hold that evaluating their regarded-as claim would require a court eventually to consider the accommodation options, which would in turn require it to assess the CBA's terms. Accordingly, we AFFIRM the district court's conclusion that this claim is precluded by the RLA.

## III.  CONCLUSION

We AFFIRM the district court's final Order regarding the Pilot Plaintiffs.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 23-1703

ROBERT W. ODELL, JR., et al.,

     Plaintiffs,

KEVIN WEBBER; AUSTIN ROBERT ISAAC HUDNUTT;
CHRISTIAN TOUGAS; CHARLES CHRISTIAN GALTON;
ESTATE OF KEVIN MCALLISTER,

     Plaintiffs - Appellants,

     v.

KALITTA AIR, LLC; CONRAD KALITTA, in his official capacity,

     Defendants - Appellees.

```
┌─────────────────────────────┐
│           FILED             │
│        Jul 09, 2024         │
│   KELLY L. STEPHENS, Clerk  │
└─────────────────────────────┘
```

Before:  BATCHELDER, MOORE, and CLAY, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

*Kelly L. Stephens*

_____

Kelly L. Stephens, Clerk

# Appendix B

## I. Intentional Discrimination References in Complaint and Accompanying Declarations

1. Alleging Kalitta was "*committed to its discriminatory process*." R.1, PageID #6, ¶ 12.

2. Claiming the "pretext of Kalitta's safety rationale has only been underscored as time has gone by, yet the company has inexplicably maintained it[s] *discriminatory . . . policies*." R.1, PageID ##8–9, ¶ 16.

3. Claiming the "company's insistence on requiring an immunization method that would realistically endanger its employees' health or cause them to violate their beliefs-when a no-cost and very effective alternative was available-gives rise to a *strong inference of discriminatory intent*." R.1, PageID #11, ¶ 20.

4. Alleging that "[w]hile Kalitta is also committed to *disability-based discrimination*, the company apparently harbors a *particularly intense animus towards religious employees*." R.1, PageID #13, ¶ 24.

5. Stating Kalitta's Chief of Human Resources stated that "Even if [employees entitled to an accommodation] could come back, *we don't want them back*." R.1, PageID ##4–5, ¶ 8.

6. Alleging "Kalitta would brook no exceptions to its [vaccination] mandate and would consider no individual circumstances.

Indeed, the company told its employees that the 'accommodation' for employees [seeking religious and medical exemptions] *would be unpaid leave followed by termination before even a single request could be made*." R.1, PageID #3, ¶ 4.

7. Claiming "Kalitta offered a series of justifications for its no-accommodation dictate, but those were continually rebutted by the facts. What is left now is a series of post hoc rationalizations for *an ill-conceived policy that violates Title VII and the ADA by allowing no accommodations*." R.1, PageID #3, ¶ 5.

8. Claiming "it is untenable that Kalitta could have reasonably believed that no accommodations were possible under EO 14042—the company's statements to employees stating as much were merely *pretext for forcing out religious and disabled employees* unable to receive a vaccination." R.1, PageID #5, ¶ 10.

9. Alleging stated justification for no accommodations was a provably "false statement made to coerce compliance, an inauthentic justification *to purge disfavored religious and disabled employees*." R.1, PageID #6, ¶ 11.

10. Alleging the safety rationale offered by Kalitta for its no accommodation policy was merely a "*pretextual and hypothetical justification*." R.1, PageID #7, ¶¶ 13–14.

11. Stating that prior "to receiving any exemption requests, however, *Kalitta informed its employees that there would be no [religious or medical] accommodations given*." R.1, PageID #26, ¶ 61.

12. Stating the Kalitta's CEO "made the *personal decision to violate Title VII and the ADA*. Mr. Kalitta decided to require vaccines

and to allow no accommodations, even when required. R.1, PageID #42, ¶ 111.

13. Alleging that terminated employees who sought religious or medical accommodation "even though Kalitta makes accommodations all the time: . . . For instance, there are as many as 50 employees in the company with no Chinese visa who must not be scheduled to travel to China. Similarly, Kalitta constantly works around sending any employee to Canada with a prior felony on their record. R.1, PageID #67, ¶ 198.

14. Declaring that Kalitta instituted and enforced a "100% vaccination policy" with no accommodations possible, but has a "long history long history of working schedules around countries to which pilots or mechanics cannot travel. For instance, there are as many as 50 employees in the company with no Chinese visa who must not be scheduled to travel to China. Likewise, Kalitta constantly works around sending any employee to Canada with a prior felony on their record." R.1-7, Declaration of Pilot Kevin Webber, PageID #152, ¶¶ 23-24.

15. Declaring that in "just the group for which [the pilot declarant] was responsible, there were 11 instructors lacking certain international credentials. Kalitta continually (and easily) creates scheduling accommodations for those employees on an on-going basis. R.1-7, Declaration of Pilot Kevin Webber, PageID #153, ¶ 25.

16. Declaring "_Kalitta simply did not want unvaccinated employees in the company at all_, and used the pandemic and President's Executive Order as convenient excuses to purge disfavored employees. _In fact, it appears Kalitta particularly disfavors religious employees and was glad to see the ones willing to stand_

3

*up for their beliefs forced out of the company*." R.1-7, Declaration of Pilot Kevin Webber, PageID #154, ¶ 32.

17. Declaring that Kalitta has a "long history of working schedules around countries to which pilots or mechanics cannot travel. Avoiding certain countries for trips is built in to the Kalitta system—it would be no burden for the company to accommodate . . . employees [seeking religious or medical accommodation]. R.1-8, Declaration of Pilot Austin Hudnutt, PageID #162, ¶ 21.

18. Declaring that, when Kalitta's Vice President of HR was questioned about the safety and legality of the vaccine mandate, she responded that she *wished that all the employees who had sought religious and medical accommodations "would just leave and put us out of our misery*." R.1-9, Declaration of Pilot Christian Tougas, PageID #166, ¶ 8.

19. Declaring that Kalitta's Vice President of HR stated that "*even if" employees placed on extended leave after seeking religious and medical accommodation "could come back, we don't want them back*." R.1-9, Declaration of Pilot Christian Tougas, PageID #166-167, ¶ 9.

## II. Intentional Discrimination References in Motion to Dismiss Response and Declarations

1. "*Discrimination based on facts outside the CBA* (such as that alleged here, ECF 1 at 4–6) also eliminates the RLA preemption question." R. 27-1, PageID #374.

2. "As alleged, *the discrimination was company-wide and not based in any separate pilot agreement*. *See* ECF 1 at 3–4, ¶ 8." R.27-1, PageID #374.

3.  "If a country had a vaccine requirement that a pilot was unable to meet, the company could simply not schedule him to fly there—an accommodation outside the CBA."  R.27-1, PageID #380.

4.  "[P]ilots are constantly moved around to fill schedules at the company's discretion.  The flexibility in scheduling allows Kalitta to have certain pilots avoid certain countries—a practice Kalitta engages in regularly without violating the CBA."  R.27-1, PageID #380.

5.  Arguing Kalitta's no accommodation policy under any circumstances was "*strong evidence of the company's discriminatory intent*."  Plaintiffs' Opposition to Motion to Dismiss, R.27-1, PageID # 381.

6.  Highlighting that Defendants' RLA arguments "are akin to those rejected in *Yelder* where the defendant rebutted the plaintiff's claims 'only by listing provisions of the CBA dealing with the [terms used to justify discipline against the plaintiff] and asserting that these provisions will require interpretation by the Court.'"  R.27-1, PageID #389.

7.  Arguing the "[T]he accommodation claims are not precluded (regardless of the CBA's terms) because *those claims are based on the conduct and motive of Defendants*."  R.27-1, PageID #391.

8.  Asserting that the "RLA does not preclude plaintiffs from bringing *charges of discrimination based on how a CBA was applied*."  R. 27-1, PageID #392.

9. Emphasizing that the Pilots do not "challenge the 'meaning' of a CBA provision, but instead asserted only that *the CBA was 'applied in a discriminatory manner*.'" R. 27-1, PageID #392 (quoting *Yelder*, 2020 WL 1083785, at *7, and its treatment of *"disparate treatment"*).

10. Declaring that pilots unable to fly to Canada, or some country that has a problem with their ethnic background, "are reassigned or bypassed if a trip comes up to a country they cannot enter." R. 27-7, PageID #413, ¶ 4.

## III. Intentional Discrimination References in Rule 56(d) Briefing and Affidavits

1. "[Plaintiffs previously] point[ed] to facts that demonstrate **the** *discrimination here took place outside of the reach of the collective bargaining agreement* ('CBA')." R. 38, PageID #503, ¶ 3.

2. "Defendants fail to mention that once the bids are made by seniority, the company then shuffles pilot schedules around at will without violating the CBA. . . . Further development (through discovery) will demonstrate the extent of these disputed facts . . . ." R. 38, PageID ##503–04, ¶¶ 4–5.

3. Request for "discovery (in addition to the facts already provided to the Court) that will illustrate *Defendants' discrimination during what was a bad faith accommodation process*—conduct that falls outside the RLA and will highlight Defendants' *ex post* attempt to use the CBA as a shield from liability when *the pilot contract has never been followed previously under related circumstances*." R.38, PageID #504, ¶ 7.

4. Request for "*facts such as Defendants' regular business practice to allow pilots to fly without required vaccines prior to the COVID-19 vaccination requirement* (*i.e.*, fly with an accommodation from any supposed vaccine requirement)." R.38, PageID #504, ¶ 8.

5. Asserting that, to "the extent that the CBA's terms are even implicated—and, to be clear, they are not—*applying a CBA in a discriminatory manner removes the RLA shield anyway*." R.38, PageID #505, ¶ 9.

6. Emphasizing that "Plaintiffs should be afforded an opportunity to conduct discovery regarding facts tending to demonstrate Defendants' pattern and practice of regularly providing scheduling accommodations and/or restructuring schedules for pilots unrelated to Defendants' compulsory COVID-19 vaccination policy . . . ." R.38-1, PageID #511, ¶ 9.

7. Stressing that "Plaintiffs should be afforded an opportunity to conduct discovery regarding *whether there were reasonable accommodation options available that Defendant pretextually refused to consider*, much less offer, that would not have implicated the CBA and/or the Railway Labor Act ('RLA')." R.38-1, PageID #511, ¶ 12.

8. Stating that "Plaintiffs should be afforded an opportunity to conduct discovery regarding *when* Defendants determined that the RLA allowed it to institute a 'no exemption' and 'no accommodation' policy . . . for pilots." R.38-1, PageID #511, ¶ 13.

9. Highlighting that "Plaintiffs should be afforded an opportunity to conduct discovery regarding why—if the CBA were actually implicated—that the accommodation forms provided to pilots by

7

Defendants were marked as Title VII and ADA forms, and [not] CBA leave forms . . . ." R.38-1, PageID #512, ¶ 17.

10. Seeking discovery on whether Defendants "received additional benefits from the government for obtaining 100% compliance, *regardless of Title VII or ADA rights*." R.38-1, PageID #512, ¶ 18.

11. Asserting that "Plaintiffs should be afforded an opportunity to conduct discovery regarding *whether Defendants instituted a pattern and practice of unlawful discrimination* . . . and whether a company-wide discriminatory policy can be preempted by the RLA in these circumstances." R.38-1, PageID #512, ¶ 19.

12. Arguing that "Defendants simply chose not to accommodate because *the company was committed to expelling religious and medically vulnerable employees who would not acquiesce* to Kalitta's coercion." R. 42, PageID #532.

13. Arguing that the evidence known "at this early stage indicates additional factual issues precluding summary judgment. This includes the fact that Defendants demanded employees request accommodations using forms labeled as Title VII and ADA, rather than using leave forms under the CBA. *See* (ECF No. 38-1, ¶ 17). Additionally, as noted in the Complaint, Defendants' Vice President of Human Resources, Laurie Stockton, instructed Plaintiff Christian Tougas that, "even if [employees entitled to an accommodation] could come back, *we don't want them back*." ECF No. 1, ¶ 8. *In other words, Defendants were happy (though mistaken) that Executive Order 14042 allowed the company to remove unvaccinated pilots entitled to protection under the ADA and Title VII, no matter their exemption status*." R. 42, PageID ##534–35.

14. Contending that "Defendants *can still be liable under Title VII for intentional discrimination, even if they are permitted to pretextually invoke the CBA*." R. 42, PageID #536.

15. Emphasizing that "at bottom, *this case shines a spotlight on the conduct and motives underlying Defendants' decision to terminate all employees who sought accommodations under Title VII and the ADA*. Such a case thus falls outside the RLA." R. 42, PageID ##535–36.

## IV. Intentional Discrimination References in the Report and Recommendation.

1. Recognizing that "pilots with prior felony convictions cannot enter Canada" and yet Kalitta accommodates those pilots' schedules. R.43, PageID #572.

2. Concluding that "the Court cannot decide the Pilot's ***discrimination claims*** without interpreting the CBA." R.43, PageID #573.